UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JEAN SANDBERG, CIVIL NO. 00-2398 (MJD/JGL)

Plaintiff,

v. REPORT AND RECOMMENDATION

JOHN POTTER,
Postmaster General/United States
Postal Service Chief Executive Office,

Defendant.

The above matter came on for hearing before the undersigned on April 1, 2002 upon Defendant's Motion for Summary Judgment [Docket No. 52]. Reino J. Paaso, Esq. appeared on behalf of Plaintiff; Mary Jo Madigan, Assistant United States Attorney, appeared on behalf of Defendant. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Upon the following Findings of Fact/Report, it is recommended that Defendant's Motion for Summary Judgment [Docket No. 52] be denied as to Count One of the Amended Complaint and granted as to Count Two of the Amended Complaint. We also note that Plaintiff has filed a Motion for Partial Summary Judgment [Docket No. 43], but there do not appear to be other pleadings on file in support of the Motion, nor has oral argument been scheduled. We recommend that this Motion be denied without prejudice.

## FINDINGS OF FACT/REPORT

## I. BACKGROUND

Plaintiff is a former employee of the U.S. Postal Service who was terminated. Count One of Plaintiff's Amended Complaint alleges that Defendant retaliated against her

FILED JUN 04 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

in violation of Title VII of the Civil Rights Act ("Title VII"). Count Two of Plaintiff's Amended Complaint alleges that Defendant discriminated against her based upon a disability in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973. Plaintiff litigated similar claims against the United States Postal Service in this Court in the recent past. See Sandberg v. Henderson, Dist. Ct. No. 98-1653 (D. Minn. April 6, 2000).

## II. LEGAL STANDARD

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate if the materials submitted in support of the motion "show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The standards for considering a Motion for Summary Judgment have their foundation in the provisions of Rule 56 of the Federal Rules of Civil Procedure, as interpreted in a trilogy of cases decided by the Supreme Court in 1986. In Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court described the importance of the summary judgment procedure:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

On a Motion for Summary Judgment, the moving party has the initial burden of establishing the "material facts" and demonstrating that there is not a "genuine" dispute as to whether those material facts are true. It is possible to satisfy that burden without filing Affidavits. Celotex Corp., 477 U.S. at 322-323. To defeat the motion, the opposing

party must then establish that there is a "genuine" issue as to material facts. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e).

The Court is guided in determining issues of materiality of the facts and the genuineness of the dispute by additional standards. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 586. The Court considers the Motion for Summary Judgment based upon the materials presented in connection with the Motion. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court's inquiry should be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251.

These principles have been explained and applied by the Court of Appeals for the Eighth Circuit in numerous cases. See, e.g., Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997); Krenik v. County of LeSueur, 74 F.3d 953, 957 (8th Cir.1995).

## III. DISCUSSION

### A. Count One - Retaliation

To state a prima facie claim of rehabilitation, Plaintiff must establish three elements: (1) that she engaged in a statutorily protected activity; (2) the postal service took adverse action against her; and (3) a causal connection between the protected activity and

the adverse action. Borgen v. Minn., 236 F.3d 399, 407 (8th Cir. 2000). Here, Defendant concedes that Plaintiff satisfied the first element by offering proof that she filed several EEO complaints, grievances and a prior lawsuit against the Postal Service, all of which are protected activities. Defendant also concedes that the second element is satisfied because Plaintiff's separation was an adverse action. Defendant, however, argues that Plaintiff has failed to make a prima facie showing of a causal connection between the protected activity and the separation.

Among Plaintiff's claims is that Defendant failed to provide Plaintiff notice of openings. Defendant seeks summary judgment as to this issue, contending that as a matter of law it was not required to provide notice, thus its failure to provide notice could not constitute adverse employment action as a matter of law.[1] In support of its Motion, Defendant points out:

> The collective bargaining agreement governs the situations when the defendant must provide a copy of a notice of intent regarding a new or vacant position, and limits that to any employee on sick leave or off-site training on the day the posting is made, or to employees absent for annual leave who have requested in writing, stating their mailing address, to have copy of any applicable notice. See Ex. 1, Stromquist Decl. at Att. B, Article 38.4.A. An employee in leave without pay status is not entitled to personal notice of new or vacant positions under the Article 38.4.A provisions. Id.

Plaintiff contends that she did in fact "request in writing" that she be provided such notices. To support her position, Plaintiff submitted correspondence between herself and Defendant which she claims demonstrates that she actually requested notice of the new job postings. One piece of correspondence is a letter from Arlene Le Blanc to Plaintiff

---

1

Defendant also argues that its failure to provide notice was not motivated by retaliation of any kind, but that factual issue is not before the court on this Motion.

which provides, in relevant part, as follows:

> I have been advised by the Personnel Department that you have requested copies of postings, job descriptions, etc., which they have been provided to you. I am puzzled why you would not request this information from me. As your supervisor, I would be happy to provide you with such information if requested. This is stated to clarify that you have not requested such information from me, nor have I failed to provide it.

Affidavit of Jean Sandberg ("Sandberg Aff."), Exh. A at 3 (emphasis added).

Plaintiff responded to that letter as follows:

> I request that all available information as to any and all "vacant" position/s and or detail assignment/s currently known and or request re-assignment to another USPS facility, as medically directed via the OWCP-5 Work Restriction Evaluation dated December 1, 1998. Please provide until I am in a re-assignment position within the USPS.

Sandberg Aff., Exh. B at 5 (emphasis added). Defendant responded to Plaintiff's letter in a letter dated January 25, 1999 that provides, in relevant part, as follows:

> I was asked by Betty Shaughnessy of Personnel services to send copies of EAS vacancy notices to you. It would serve no purpose to send bid postings to you, because as you know, you can only bid on jobs in your own occupational group. You were the successful applicant on the one such bid (notice of intent) that has been posted in this unit since your absence. I will certainly send you a copy of any future posting(s) of which your position of record allows you to bid.

Sandberg Aff., Exh. A at 2 (emphasis added).

Defendant contends that Plaintiff's submissions are not dispositive because regardless of whether Plaintiff requested notice of new job postings or not, the Postal Service was not obligated to send Plaintiff such notices under its Collective Bargaining Agreement since she was on leave without pay status, rather than sick leave, training, or

annual leave status.[2] Defendant further contends that it terminated Plaintiff not because she filed complaints and a lawsuit, but because she was absent from work for more than one year, and based upon statements from her physician it appeared that she would not be able to recover and return to work in a reasonable time.[3]

We conclude that the evidence suggests a question of fact as to the respective positions of the Parties. There also remain, of course, other factual questions such as whether the failure to provide the notice was an act of retaliation at all, and whether, but for Defendant's alleged failure to provide her with notice of the new positions, Plaintiff would not have been excessively absent and would have applied for and received the new position based upon her prior experience.

**B. <u>Count Two - Disability Discrimination</u>**

Plaintiff contends that she was discriminated against because she was required to undergo a fitness-for-duty examination and Defendant used her lack of

---

2

Defendant's Collective Bargaining Agreement provides, in relevant part, as follows: In the Maintenance Craft all vacant duty assignments shall be filled as follows: "1. When a vacant or newly established duty assignment is to be filled, the Employer shall post for a period of seven calender days, a notice of intent that the duty assignment will be filled using the preferred assignment selection register and/or promotion eligibility register . . . ." In addition, any employee on sick leave or off-site training on the day of the posting shall be furnished a copy of any applicable notice of intent. Employees absent for annual leave who have requested in writing, stating their mailing address, shall have a copy of any applicable notice of intent mailed to them. (Stromquist Aff. at Exh. 2, Attach. B, Article 38.4.A of Collective Bargaining Agreement).

3

Defendant's Collective Bargaining Agreement provides that Postal Service employees are required to be in regular attendance. (Stromquist Aff. at Exh. 2, Attach. J, ELM 666.81) Moreover, a Postal Service employee may be separated from employment if the employee is absent for more than one year in leave without pay status unless there is cause to expect that the employee will recover and return to work within a reasonable time after the end of one year in leave without pay status. <u>Id.</u> at Attach. K, ELM 514.4(d)(4).

attendance against her in an evaluation despite his knowledge that her attendance was affected by use of the Family Medical Leave Act ("FMLA"). Defendant contends that Plaintiff's inability to attend work for over one year in and of itself justified the decision to conduct a fitness-for-duty examination. Defendant further contends that Plaintiff's absences were not excused by the FMLA because she had not worked the requisite number of hours in the 12 months preceding her termination to qualify for benefits under the FMLA: An employee accrues up to 12 weeks of FMLA benefits in each year in which they work at least 1250 hours; Ms. Sandberg's benefits were used up by June, 1998; she did not accrue any benefits for 1999 or later, since she has not worked since May 5, 1998. Stromquist Affidavit, paragraphs 24 through 28.

To survive Defendant's Motion for Summary Judgment on this claim, Plaintiff must make a prima facie showing of genuine and material fact issues as to all three elements: (1) she must show that at the time of the alleged discrimination she was an otherwise qualified individual; (2) with a disability; and (3) that was treated adversely because of her disability. 29 U.S.C. § 794(a); Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000). Even if there were fact issues as to the first element, there is not a genuine issue of material fact as to the second and third element. Requiring Plaintiff to submit to a fitness-for-duty examination is not equivalent to perceiving her as disabled, or treating her adversely because of the perceived disability. The Eighth Circuit has held that such requests do not constitute adverse actions. See, e.g., Cody v. CIGNA Healthcare of St. Louis, Inc., 139 F.3d 595, 599 (8th Cir. 1998) ("A request for an evaluation is not equivalent to treatment of an employee as though she was substantially impaired. See Miller v. Nat. Cas. Co., 61 F.3d 627, 630 (8th Cir. 1995) (quoting 29 C.F.R. App. 1630.9). Employers need to be able to use reasonable means to

ascertain the cause of troubling behavior without exposing themselves to ADA claims under §§ 12112(a) and 12102(2)(C). See Johnson v. Boardman Petroleum, 923 F. Supp. 1563, 1568 (S.D. Ga.1996) ("offer of a leave of absence showed concern for employee's well being, not treatment of the employee as disabled"); see also, Sullivan v. River Valley School Dist., 197 F.3d 804, 810-811 (6th Cir. 1999) ("a defendant employer's perception that health problems are adversely affecting an employee's job performance is not tantamount to regarding that employee as disabled"); Sanchez v. Henderson, 188 F.3d 740, 744-45 (7th Cir. 1999).

The conclusion of these authorities is substantiated by the facts of this case. Defendant first requested that Plaintiff submit to a fitness-for-duty examination in August 1996, but that occurred well before the separation and during the time period covered by Plaintiff's first lawsuit against the Postal Service. Thus, the 1996 examination is insufficient to constitute a perception of disability or adverse action in this case.

The second request that Plaintiff submit to a fitness-for-duty examination occurred after Plaintiff had not worked for Defendant for approximately 16 months. During that time, Plaintiff told Defendant that she was unable to work because of work-related stress and depression. Thus, in accordance with Defendant's Safety and Health policies, Defendant requested that Plaintiff appear for a fitness-for-duty examination before returning to work. "The purpose of the Postal Service fitness-for-duty examination is to ascertain whether or not the employee is medically capable of meeting the requirements of his or her job." See Declaration of Drew Aliperto at Exh. L; ELM 864.31.

**RECOMMENDATION**

For the reasons set forth above, it is recommended that:

1. Defendant's Motion for Summary Judgment [Docket No. 52] be denied as to Count One of the Amended Complaint and granted as to Count Two of the Amended Complaint; and

2. Plaintiff's Motion for Partial Summary Judgment [Docket No. 43] be denied without prejudice.

Dated: June 4, 2002

JOHN M. MASON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before June 19, 2002 a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before June 19, 2002.